IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUSAN SMITH HUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV695 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Susan Smith Huff ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 25, 2007 and May 25, 2007, respectively, alleging

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

a disability onset date of July 1, 2001. (Tr. at 22.)[2] Her applications were denied initially (Tr. at 34, 36-39) and upon reconsideration (Tr. at 37, 42-44). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 45-47.) Plaintiff, along with her attorney and a vocational expert ("VE") attended the subsequent hearing on December 2, 2009. (Tr. at 22.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 33) and, on July 8, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 5-7).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant met the insured status requirements of the Social Security Act through March 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe combination of impairments: a polysubstance abuse disorder; a bipolar disorder; asthma; and hepatitis C infection (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant's mental impairments, including the substance abuse disorder, meet Listings 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
> . . . .

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

5. If the claimant stopped the substance use, the remaining limitations would still cause more than a minimal impact on the claimant's ability to perform basic work activities. Therefore, the claimant would continue to have a severe impairment or combination of impairments.
. . . .

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
. . . .

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c) with environmental and mental restrictions.

(Tr. at 25, 27, 28.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that, absent substance abuse, Plaintiff could perform a significant number of jobs in the national economy. (Tr. at 32.) He concluded that "[b]ecause the claimant would not be disabled if she stopped the substance use . . . [her] substance use . . . [was] a contributing factor material to the determination of disability." (Tr. at 33.) Accordingly, Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Id.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

[the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

Plaintiff argues that the ALJ improperly applied 42 U.S.C. § 423(d)(2)(C) when he found that Plaintiff's substance abuse materially contributed to her disability. (Pl.'s Br. at 1.) The statute in question provides that, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, where (1) a claimant is found to be disabled and (2) the record provides medical evidence of a claimant's drug addiction, an ALJ must determine whether the claimant would remain disabled if she stopped using drugs. 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1).

To make this determination, the ALJ must first determine which physical and mental limitations, if any, would remain in the absence of drug addiction. 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2). The ALJ must then "determine whether any or all of [the] remaining limitations would be disabling." Id. If the remaining limitations would not be disabling, then the drug addiction "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i).

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

Here, the ALJ initially found Plaintiff disabled at step three, in that her impairments met the criteria for two listed impairments, namely Listing 12.04 (Affective Disorders) and Listing 12.09 (Substance Addiction Disorders). (Tr. at 25.) The ALJ then proceeded to consider whether Plaintiff's drug abuse was a contributing factor to her disability. He found that, absent substance use, Plaintiff's remaining impairments would still cause more than a minimal impact on her ability to perform basic work activities. However, he determined that her remaining severe impairments would not meet or equal a listed impairment. (Tr. at 27.) Therefore, the ALJ assessed Plaintiff's RFC, and found that,

> [a]bsent use of drugs or alcohol, the claimant can sit, stand, and walk for up to 6 hours in an 8-hour day, can lift 50 pounds occasionally, and can lift and carry 25 pounds frequently. She should avoid concentrated exposure to respiratory irritants such as dust, fumes, and gases. She has a decreased ability to concentrate and attend to work tasks to the extent that she can perform only simple, routine, repetitive tasks.

(Tr. at 28.) Although this RFC rendered Plaintiff unable to perform her past relevant work, the ALJ determined at step five that Plaintiff could perform other jobs available in the community and, accordingly, was not disabled. (Tr. at 32.)

Plaintiff contends that substantial evidence in her case fails to show that, absent her substance abuse, she would retain the RFC set out above. In particular, Plaintiff alleges that her "extensive history of substance abuse . . . is so intertwined with her bipolar disorder and other psychological problems that it is simply impossible to make a determination that [Plaintiff] would be able to return to substantial gainful activity but for the substance abuse." (Pl.'s Br. at 12.) Plaintiff further contends that her "use of non-prescribed substances is a symptom of her bipolar disorder and other severe psychological problems–not the cause." (Id.)

8

In considering Plaintiff's contentions, the Court notes that where substance abuse disorders are combined with mental impairments, it is often difficult to separate the two impairments from each other for purposes of determining materiality." Cobb v. Astrue, No. 1:07CV253, 2009 WL 3206731, at *4 (M.D.N.C. Sept. 30, 2009) (unpublished). Nevertheless, "[e]vidence of how a claimant performed during a period of sobriety–either from the claimant's existing medical records or developed by medical history–may be helpful to the ALJ in making such a determination." Id. (citing Emergency Teletype, Office of Disability, Social Security Administration, "Questions and Answers Concerning [Drug Abuse and Alcoholism] from July 1996 Teleconference," August 30, 1996, at No. 29 (hereinafter "Emergency Teletype")). As recognized in the Emergency Teletype, some claimants may lack past periods of sobriety or records of their functioning during those periods. In such cases, an ALJ may be unable to project, based on substantial evidence, which limitations would remain absent the claimant's substance abuse, and must instead conclude that substance use is not material to her disability claim. Contrary to Plaintiff's assertions, this is not such a case.

Here, the record contains ample medical evidence contrasting Plaintiff's functional abilities during periods of drug use and relative sobriety. Just after her alleged disability onset date, Plaintiff attempted suicide while intoxicated. (Tr. at 25.) However, after completing an alcohol and substance abuse program in 2002-03 and remaining sober for nine months, Plaintiff reported that her mood was "pretty good," that she had no symptoms of depression other than mild difficulties sleeping, and that her anxiety was under reasonable control. (Tr. at 151.) In February 2004, Plaintiff again reported several months of relative sobriety, during which her

9

mood was good, her thought processes were logical, and no evidence of psychosis was noted. (Tr. at 148.)

Unfortunately, Plaintiff resumed her drug abuse in 2004 and ultimately entered the first of several rehabilitation programs in October 2006. (Tr. at 25.) From that time until mid-2009, Plaintiff's treatment records chronicle her continued, regular use of cocaine and myriad other substances. The records from this period also reflect Plaintiff's significant bipolar depressive symptoms, with suicidal ideations, hallucinations, and global assessment of functioning ("GAF") scores generally ranging from 25 to 49, indicating, at best, serious symptoms, and at worst, the inability to function in almost all areas. (Tr. at 25-26.)

However, at her hearing in December 2009, Plaintiff testified that she had been sober for "about five months," other than her prescribed methadone use. (Tr. at 419.) Her medical records from those months indicate significant improvements in her mood, less anxiety, and improvements in her sleep quality and judgment. (Tr. at 386-87, 390-91.) Plaintiff also testified that, despite some continued ups and downs, her prescribed psychiatric medications were generally working well to stabilize her mood (Tr. at 417, 419), and that these medications were also responsible for helping her to maintain her sobriety (Tr. at 428).

Based on the above evidence, the ALJ determined that Plaintiff's substance abuse was material to her disability. Moreover, he noted that the opinions of the two non-examining State agency psychological consultants of record substantiated this finding. (Tr. at 26-27.) The first of these consultants reviewed Plaintiff's record in November 2007 and found that, when abusing substances, Plaintiff lacked both the attention necessary to complete a work day and the ability

10

to set goals and adapt to changes without close supervision. (Tr. at 276.) In contrast, he opined that, absent substance abuse, Plaintiff could meet the mental demands of unskilled work with limited interpersonal supervision. (Id.) The second psychological consultant reviewed Plaintiff's records in August 2008. He opined that, "due to substance abuse, [Plaintiff] would have difficulty maintaining competitive employment on a sustained basis," but that absent such abuse, she "should be capable of performing [simple, routine, repetitive tasks]." (Tr. at 308.) Accordingly, both consultants found Plaintiff's drug abuse material to her disability.

To challenge this conclusion, Plaintiff points to the neurobehavioral status examination performed by Karla Thompson, Ph.D., on February 12, 2010. (See Tr. at 12-17.) Dr. Thompson's report was not available to the ALJ, and therefore played no role in his decision-making, but was provided to the Appeals Council for review. (Pl.'s Br. at 12.) As a preliminary matter, the Fourth Circuit has expressly held that the courts must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record,'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Wilkins v. Sec., Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). This remains true even where, as here, the Appeals Council ultimately denied review of the plaintiff's underlying claim. Meyer, 662 F.3d at 704. Nonetheless, remand is only appropriate where the new evidence in question competes with the evidence underlying an ALJ's decision, such that a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96).

11

Here, however, Dr. Thompson's evaluation reveals no evidence requiring remand. In the report, Dr. Thompson expressed doubt as to the results of the testing and stated that "I cannot claim to have obtained a valid assessment of [Plaintiff's] current cognitive functioning" during her evaluation. (Tr. at 17.) Dr. Thompson ultimately opined that "if those involved in [Plaintiff's] ongoing care can confirm that her presentation at the time of [the] evaluation is representative of her day-to-day functioning," then Plaintiff's "psychiatric issues and history of substance abuse would represent significant barriers to gainful employment," and Plaintiff would not be "capable of maintaining competitive employment." However, as noted above, Dr. Thompson expressed doubt that she had obtained a valid assessment of Plaintiff's current cognitive functioning during her evaluation. (Tr. at 17.) Additionally, Dr. Thompson further noted that Plaintiff's "reports of changes in her cognitive function were vague and hardly compelling" and that Plaintiff "made it clear, upon presentation, that she was hoping that this evaluation would aid her in her application for disability benefits." (Id.) Given these sweeping caveats, Dr. Thompson's report does not compete with the evidence in the record, and substantial evidence supports the ALJ's finding as to materiality notwithstanding the new evidence presented by Dr. Thompson.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 11th day of February, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge